AO 106 (Rev. 06/09)   Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### FILED

for the

Eastern District of Missouri

FEB **2 1** 2020

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| **In the Matter of the Search of** ) | |
| ) | |
| THE ELECTRONIC DEVICES DESCRIBED IN ) | Case No. 4:20 MJ 3096 NCC |
| ATTACHMENT A. ) | |

## APPLICATION FOR A SEARCH WARRANT

I, ___Michael Betz___, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

THE ELECTRONIC DEVICES DESCRIBED IN ATTACHMENT A.

located in the _____EASTERN_____ District of _____MISSOURI_____, there is now concealed

see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

✓ evidence of a crime;
✓ contraband, fruits of crime, or other items illegally possessed;
✓ property designed for use, intended for use, or used in committing a crime;
❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21, U.S.C., §§ 841(a), 843, 846 | Conspiracy to possess with intent to distribute controlled substance(s); firearms offenses |
| Title 18, U.S.C. §§ 922(g), 924(c) | |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE.

✓ Continued on the attached sheet.
❑ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

MICHAEL BETZ, Special Federal Officer
FBI

*Printed name and title*

**Sworn to before me and signed in my presence.**

Date: _____February 21, 2020_____

*Judge's signature*

City and State: ____St. Louis, MO____

Hon. Noelle C. Collins, U.S. Magistrate Judge
*Printed name and title*

AUSA:   Angie Danis

**FILED**

FEB 21 2020

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

IN THE MATTER OF THE SEARCH OF      )
THE ELECTRONIC DEVICES               )      No. 4:20 MJ 3096 NCC
DESCRIBED IN ATTACHMENT A            )
                                      )      FILED UNDER SEAL

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A SEARCH WARRANT

I, Michael Betz, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property – electronic devices – described in Attachment A, which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a deputized Special Federal Officer (SFO) with the Federal Bureau of Investigation (FBI). Additionally, I am employed as a Police Officer for the St. Louis Metropolitan Police Department (SLMPD) and have been so employed for the past fifteen (15) years. I am presently assigned to the St. Louis Division of the Federal Bureau of Investigation as a member of the Violent Crimes Task Force.

3.      Through my training and experience, I am familiar with the debriefing of cooperating witnesses and/or sources of information and methods of searching locations where narcotics, narcotics proceeds, and/or weapons may be found. Additionally, I have been trained and have experience in conducting surveillance, telephone toll analysis, and am familiar with the manner of importation and distribution of narcotics as well as the payment methods utilized by narcotic distributors. During the past fifteen (15) years as a Police Officer with the SLMPD, I

have been involved in a multitude of drug, gang, and violent crime investigations involving arrests, interviews, informant debriefings, and surveillances. I have also been the affiant on numerous Federal and State Search Warrant Affidavits and participated in numerous investigations that employed the use of precision location warrants (PLWs), Pen Registers, and Title III wiretaps. Through the course of my training and experience, I am familiar with methods employed by narcotics distributors to conduct their business and to subvert law enforcement detection including, but not limited to, the use of multiple cellular telephones to compartmentalize their activity.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 846, 841(a), and 843, and Title 18, United States Code, Sections 922(g) and 924(c) have been committed by Durrell Johnson and/or other persons known and unknown. There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## LOCATION TO BE SEARCHED AND IDENTIFICATION OF THE DEVICE

6.      The electronic devices to be searched are described as follows and are hereinafter referred to collectively as "the Devices." The Devices are currently located at the headquarters for the St. Louis Metropolitan Police Department (SLMPD), located at 1915 Olive Street, St. Louis, Missouri 63103, within the Eastern District of Missouri.

2

**a. Device #1:** a black Motorola phone with a purple rear and a damaged screen bearing IMEI 351841099329346 and FCC ID IHDT56XC2; photographed and attached as Exhibits A, B, and C; seized from the master bedroom at 1513 Agnes and believed to belong to Durrell Johnson.

**b. Device #2:** a black LG phone with a metallic pink outline and a damaged screen bearing IMEI 359461-09-173965-7 and S/N 807CYBD173965, photographed and attached as Exhibits D, E and F; seized from the master bedroom at 1513 Agnes and believed to belong to Durrell Johnson.

**c. Device #3**: a black LG phone with a grey rear bearing IMEI 352533-10-513583-8 and S/N 901CYNL0521583, photographed and attached as Exhibits G, H, and I; seized from a secondary room on the second floor of the residence at 1513 Agnes and believed to belong to Durrell Johnson.

**d. Device #4:** a black LG phone bearing MEID 089458280002250614, photographed and attached as Exhibits J and K; seized from a television stand at 1513 Agnes in the first floor living room and believed to belong to Durrell Johnson.

7.     The applied-for warrant would authorize the forensic examination of the device for the purpose of identifying electronically stored data particularly described in Attachment B.

## TECHNICAL TERMS

8.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of

transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video,

4

or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).

5

Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

f.  Internet: The internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the internet, connections between devices on the internet often cross state and international borders, even when the devices communicating with each other are in the same state.

9.      Based on my training, experience, and research, I know that the Devices have capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, and GPS navigation Devices. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the Devices.

## **PROBABLE CAUSE**

10.     On or about June 18, 2019, members of the SLMPD Intelligence Division executed a state-level search warrant at 1513 Agnes Avenue in the City of St. Louis, within the Eastern District of Missouri. The search warrant was the result of an investigation that was conducted into Durrell Johnson during which that location was identified as his primary residence. Investigators initially became aware of Durrell Johnson after intercepting pertinent narcotics-related communication with him, as well as intercepting communication where he was

6

referenced, while monitoring a court authorized Title III wiretap of Jeffrey Stidmon's cellular telephone.[1]

11.     A subsequent investigation conducted into Durrell Johnson led investigators to believe that he was involved in the distribution of illicit narcotics as well as the possession of illicit firearms. As part of the investigation into Durrell Johnson, investigators began monitoring his Facebook social media page, which was listed under the Facebook name "Loc Dub." While monitoring this page, investigators learned that Durrell Johnson frequently utilized the "Facebook Live" application of the social media page. This application allows the user to livestream and directly communicate with their followers while doing so. Investigators were also aware that these live streams were generated using one or more cellular devices. While monitoring the "Facebook Live" feeds streamed by Durrell Johnson, investigators observed Durrell Johnson in possession of firearms and involved in behavior that was indicative of narcotics distribution, such as the possession of large amounts of U.S. currency.

12.     After conducting a briefing with members of SLMPD SWAT, Durrell Johnson was taken into custody inside the residence at 1513 Agnes. During a search of the residence, a .223 rifle, quantities of fentanyl, morphine, methamphetamine, and marijuana, narcotics paraphernalia, and U.S. currency were seized from the residence. Furthermore, the following four cellular telephone were located inside the residence: A black cellular telephone with a purple back and a damaged screen which was located in the master bedroom, a black cellular telephone with a metallic pink outline and a damaged screen in the master bedroom, a black

---

[1] Durrell Johnson and Jeffrey Stidmon were charged by Indictment on August 29, 2019 with, among other charges and with other defendants, conspiracy to distribute heroin and fentanyl and firearms offenses under cause number 4:19-CR-00718-RWS.

7

cellular telephone with a grey back in a secondary bedroom on the second floor, and a black cellular telephone on a television stand in the first floor living room. Having intercepted wire communication of pertinent narcotic-related activity with Durrell Johnson during the monitoring of co-defendant Jeffrey Stidmon's cellular device (which ended on June 7, 2019) and having knowledge that narcotics distributors commonly utilize several cellular devices to conduct illicit narcotics transactions, the Devices were seized as evidence.

13.     The Devices are currently in the lawful possession of the St. Louis Metropolitan Police Department (SLMPD) and Federal Bureau of Investigation (FBI) (hereinafter the "investigative agency(ies)"). They came into the investigative agency(ies)'s possession during the execution of a lawful search warrant. Therefore, while the investigative agency(ies) might already have all necessary authority to examine the Devices, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

14.     In my training and experience, I know that the devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the device first came into the possession of the investigative agency(ies).

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

15.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

16.     *Forensic evidence.* As further described in Attachment B, this application seeks

8

permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

      a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

      b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

      c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

      d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

9

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

17. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

18. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

19. Because this warrant seeks only permission to examine Devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

20. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the

10

internet, and disseminate them to other online criminals as they deem appropriate, *i.e.*, post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

_FBS JFU_

MICHAEL BETZ
Special Federal Officer
Federal Bureau of Investigation (FBI)

Subscribed and sworn to before me on the __2/8t__ of February, 2020.

NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE

11

## **ATTACHMENT A**

The electronic devices to be searched are described as follows and are hereinafter referred to collectively as "the Devices." The Devices are currently located at the headquarters for the St. Louis Metropolitan Police Department, located at 1915 Olive Street, St. Louis, Missouri 63103, within the Eastern District of Missouri.

**a. Device #1:** a black Motorola phone with a purple rear and a damaged screen bearing IMEI 351841099329346 and FCC ID IHDT56XC2; photographed and attached as Exhibits A, B, and C; seized from the master bedroom at 1513 Agnes and believed to belong to Durrell Johnson.

**b. Device #2:** a black LG phone with a metallic pink outline and a damaged screen bearing IMEI 359461-09-173965-7 and S/N 807CYBD173965, photographed and attached as Exhibits D, E and F; seized from the master bedroom at 1513 Agnes and believed to belong to Durrell Johnson.

**c. Device #3**: a black LG phone with a grey rear bearing IMEI 352533-10-513583-8 and S/N 901CYNL0521583, photographed and attached as Exhibits G, H, and I; seized from a secondary room on the second floor of the residence at 1513 Agnes and believed to belong to Durrell Johnson.

**d. Device #4:** a black LG phone bearing MEID 089458280002250614, photographed and attached as Exhibits J and K; seized from a television stand at 1513 Agnes in the first floor living room and believed to belong to Durrell Johnson.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

1.      All records on the Devices described in Attachment A that relate to violations of
Title 21, United States Code, Sections 846, 841(a), and 843, and Title 18, United States Code,
Sections 922(g) and 924(c) and involve Durrell Johnson, including, but not limited to:

   a. Lists of customers and related identifying information;

   b. Types, amounts, and prices of drugs trafficked as well as dates, places, and
      amounts of specific transactions;

   c. Any information related to sources of drugs (including names, addresses, phone
      numbers, or any other identifying information);

   d. All bank records, checks, credit card bills, account information, and other
      financial records;

   e. Any photographs documenting Durrell Johnson's associates engaged in drug
      trafficking and weapons offenses.

2.      Evidence of user attribution showing who used or owned the Devices at the time
the things described in this warrant were created, edited, or deleted, such as logs, phonebooks,
saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items
of evidence in whatever form and by whatever means they may have been created or stored,
including any form of computer or electronic storage (such as flash memory or other media that
can store data) and any photographic form.

DEVICE #1          BACK



IMEI- 35184109932934 6


Government
Exhibit

A

DEVICE #1          Back



IMEI- 35184109932 9346



Government
Exhibit

B

DEVICE #1        Front



FMEI - 35184109932 9346



Government
Exhibit

C



DEVICE #2 Back





IMEI-35 9461-09-173965-7



Government
Exhibit

D

DEVICE #2 Back



IMEI-359461-09-173965-7



Government
Exhibit

E

DEVICE #2        Front



IMEI- 359461-09-173965-7



Government
Exhibit

F

DEVICE #3

Back





IMEI - 352533-6-513583-8



Government
Exhibit

G

DEVICE #3          Back



IMEI - 352533-10-513583-8



Government
Exhibit
H

DEVICE #3          Front



IMEI-352533-10-513583-8



Government
Exhibit

I

DEVICE #4 BACK



MEID - 08945828000250614



Government
Exhibit

J

DEVICE #4          Front



MEID-08941542 8000 250614


Government
Exhibit

K